❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>**Two Iphones, that are currently being held at**<br>**the Milwaukee Police Department Property**<br>**room. More fully described in Attachment A.** | )<br>)<br>)  Case No.23-813M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 1/20/2023 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.      xxx❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:1/6/2023 ____ @ 9:46 a.m.

*Judge's signature*

City and state:  Milwaukee, WI _____          Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____

*Executing officer's signature*

_____

*Printed name and title*

## **ATTACHMENT A**
### *Property to Be Searched*

The property to be searched is a black Apple iPhone with silver back and a red Apple iPhone with a cracked screen and a rainbow case, including any SD cards or other removable memory/storage devices inside the iPhones (the "Devices"). The Devices are currently located at the Milwaukee Police Department Property Room and assigned Inventory Item Nos. 22045806-1 and 22045806-2.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B
*Particular Things to be Seized*

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm) or 1951(a) (Hobbs Act robbery), including but not limited to the following:

>       a.      Electronic telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, e-mails, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding illegal activities among and between members and associates involved in drug trafficking or firearms possession or sale;

>       b.      Photographs, videotapes or other depictions of assets, co-conspirators, controlled substances, or other activities related to robberies, firearms possession, or the use or sale of firearms.

>       c.      Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

>       d.      any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

>       e.      all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created

or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Two Iphones, that are currently being held at the<br>Milwaukee Police Department Property room. More<br>fully described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)    Case No. 23-813M(NJ)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❏ contraband, fruits of crime, or other items illegally possessed;
- ❏ property designed for use, intended for use, or used in committing a crime;
- ❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sections 922(g)(1)<br>and 1951(a) | Felon in Possession of a Firearm, Hobbs Acts Robbery |

The application is based on these facts:

See Attached Affidavit

- ❏ Continued on the attached sheet.
- ❏ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Heather Wright, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means)*.

Date: 1/6/2023

City and state: MIlwaukee, Wi

_____
*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

I, Heather Wright, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE**

1.       I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.       I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, illegal possession of firearms, drug trafficking offenses, and other violent crimes. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3.       Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important

1

respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software which are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

4.      I am also aware, based upon my training and experience, that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally or via electronic message "text" format. I also know that it is common for suspects who commit violent crimes to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

5.      I am also aware, based upon my training and experience, that an individual's cellular phone often contains photographs of the phone user or owner, which, in the case of a violent crime captured on surveillance footage, can be used to compare against images of the suspect for the purpose of making an identification.

6.      I am also aware, based upon my training and experience, that subjects involved in narcotics distribution and illegal firearm purchase(s), possession, and/or sales often use cellular phones to coordinate criminal activity, and evdience of the same is commonly found on the dealer's and purchaser's cell phone(s). I am aware that narcotics and firearms traffickers often take, or cause to be taken, photographs, videos, and other

2

visual depictions of themselves, their associates, firearms straw purchasers, their property, money, and their narcotics on their cell phones.

7. This affidavit is submitted in support an application for a warrant to search a cell phone, further described below and in Attachment A. The search will be for evidence and instrumentalities associated with violations of Title 18, United States Code and Sections 922(g)(1) (felon in possession of a firearm) and 1951(a) (Hobbs Act robbery), by DEVON R. BRANTLEY (dob: XX/XX/1998) and other known or unknown co-conspirators.

8. I submit that there is probable cause to believe that the cellular telephone recovered by and in the custody of the Milwaukee Police Department (MPD) during the arrest of BRANTLEY contains evidence of the above-described crimes.

9. Since the cellular telephone was seized on December 16, 2022, the Devices have been securely maintained within the custody of MPD.

10. This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other state and local law enforcement officers during their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, physical surveillance, and witness statements that I consider to be reliable as set forth herein. The facts of this affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers and confidential sources.

11. Because this affidavit is submitted for the limited purpose of a obtaining a search warrant, I have not included each and every fact known to me concerning this

3

investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the warrant

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

12. This affidavit is submitted in support of an application for a search warrant for the following portable electronic devices ("the Devices"), which are currently in the custody of MPD:

    a. Black Apple iPhone with a silver back, which is marked as Inventory Item Number: 22045806-1.

    b. Red Apple iPhone with a cracked screen and a rainbow case, which is marked as Inventory Item Number 22045806-2.

13. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

14. On November 7, 2022, a witness, hereinafter L.C., walked into MPD District 4 to report a shooting. L.C. stated that he was a bus driver for Quad Graphics, and that he transported DEVON BRANTLEY and his brother JOVAN BRANTLEY to their place of employment, Quad Graphics, located in Hatley, WI, on a regular basis. L.C. stated that on that day, he picked up BRANTLEY and JOVAN at approximately 6:40 a.m. near N. 27th Street and W. Hope Avenue and stopped at a Mobile gas station located 2620 W. Capital drive to pick up some water for himself. When he exited the gas station, he

investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the warrant

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

12. This affidavit is submitted in support of an application for a search warrant for the following portable electronic devices ("the Devices"), which are currently in the custody of MPD:

    a. Black Apple iPhone with a silver back, which is marked as Inventory Item Number: 22045806-1.

    b. Red Apple iPhone with a cracked screen and a rainbow case, which is marked as Inventory Item Number 22045806-2.

13. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

14. On November 7, 2022, a witness, hereinafter L.C., walked into MPD District 4 to report a shooting. L.C. stated that he was a bus driver for Quad Graphics, and that he transported DEVON BRANTLEY and his brother JOVAN BRANTLEY to their place of employment, Quad Graphics, located in Hatley, WI, on a regular basis. L.C. stated that on that day, he picked up BRANTLEY and JOVAN at approximately 6:40 a.m. near N. 27th Street and W. Hope Avenue and stopped at a Mobile gas station located 2620 W. Capital drive to pick up some water for himself. When he exited the gas station, he

4

observed both BRANTLEY and JOVAN standing outside the bus. L.C. observed that BRANTLEY was holding a black handgun and was pointing it at JOVAN. BRANTLEY and JOVAN continued to argue and BRANTLEY fired (5) shots in the direction of JOVAN. BRANTLEY then fled on foot. JOVAN then got back into the bus and L.C. and JOVAN drove to MPD. L.C. stated that just before arriving at the District, JOVAN fled the bus on foot. One round passed through the bus, leaving a bullet hole.  At approximately 6:44 p.m., MPD Officers obtained (5) brass 9mm spent casings from the parking lot of the Mobile gas station.

15.     On November 30, 2022, at approximately 12:45 p.m., MPD Officers responded to Froedtert Hospital regarding a shooting victim. The victim, hereinafter S.T., stated that she was in the area of 35th and Silver Spring walking northbound near 41st or 42nd streets towards W. Silver Spring Dr., in the middle of the street, when she walked past a black car with tinted windows. S.T. stated that she did not look inside the car as she walked past but knew there were people inside because she heard voices. S.T. stated that when she was approximately three car lengths past the vehicle, she heard a male say "hey!". S.T. stated that when she turned around, she observed a black male, approximately 5'1", thin build, point a black semi-automatic handgun at her and fire approximately four to five times in her direction. S.T. stated that she immediately knew that she had been shot in the calf and ran and hid in a yard nearby. S.T. stated that she removed the black coat that she had been wearing. S.T. stated that she observed the vehicle with the windows down slowly driving in the area and appeared to be looking

5

for her. S.T. stated that she walked to the bus stop, took the bus to her brother's house, where her brother called 911.

16.     Following the incident, at approximately 1:10 p.m., two United States Probation Officers, Daniel Zander and Kristina Langteau, walked into MPD District 4 to report being a witness to a potentially related incident. On November 30, 2022. Probation Officers Zander and Langteau had a scheduled home visit at 5409 N. 41st Street at 11 a.m. The home visit was scheduled with Michael Garner, DOB XX/XX/1992. Probation Officers Zander and Langteau arrived just prior to 11:00 a.m. at 5409 N. 41st Street. While walking up to the residence, Zander and Langteau observed a black Chevrolet Malibu parked in front of the residence. Although the vehicle had dark tinted windows, the driver of the vehicle rolled down the front passenger side window and spoke with the Officers. Officers Zander and Langteau recognized the driver of the vehicle to be BRANTLEY – as they have also supervised BRANTLEY since his release from custody. Officers Zander and Langteau were aware that BRANTLEY was the brother of GARNER. Officers Zander and Langteau also knew that BRANTLEY also lived at 5409 N. 41st Street. Officers Zander and Langteau briefly spoke with BRANTLEY and told BRANTLEY that following their visit with GARNER, they would be speaking with BRANTLEY. They had been unable to speak with him since the Quad Graphics bus shooting incident and were surprised to find him outside the 5409 N. 41st Street home.

17.     Probation officers Zander and Langteau were inside of 5409 N. 41st Street for approximately 10 minutes when they heard approximately (4) gunshots coming from outside the front of the residence. After waiting approximately (1) minute, Officers

6

Zander and Langteau looked out a window to the front of the house and observed the Chevrolet Malibu that they had observed being driven by BRANTLEY pull away from the curb.

18.    Approximately (2) minutes later, Probation Officers Zander and Langteau exited the residence and checked the area where they saw the vehicle parked. Probation Officers Zander and Langteau observed (4) 9mm spent casings in the street where the vehicle had been parked. Probation Officer Zander photographed and video recorded the locations of the fired casings in the street and then recovered the casings using their work-issued evidence recovery implements. Probation Officers Zander and Langteau then traveled to District 4 to report the incident.

19.    On December 14, 2022, at 7:10 p.m., MPD officers responded to the Dominos Pizza located at 6918 N. Teutonia Avenue, Milwaukee, Wisconsin for an armed robbery complaint. The caller stated that two males entered the business and attempted to rob them. The caller added that the subject fired multiple gunshots inside the building prior to leaving the scene. There were three victims associated with this incident. These victims will be referred to by their initials, A.J., D.L., and S.M., throughout this affidavit.

20.    A.J. stated that at approximately 7:04 p.m., A.J. was on duty and standing near the front counter folding pizza boxes, when two black males entered the lobby armed with semi-automatic handguns. A.J. stated that one of the males approached the front counter and pointed his handgun, with an extended magazine, at her and told her to "Come here". A. J. stated that she replied "Do you know me?" A.J. stated that she refused to walk towards the counter so Suspect 1 stated "O, you think I'm playing?"  A.J.

7

stated that the male then fired a round towards her, striking the standing food warmer. A.J. stated that she immediately ducked down and hid underneath the stainless-steel table that she was working on for her safety. A.J. stated that she remained hidden under the table until she heard the suspects exit the business. A.J. stated that once the two males were outside, she heard approximately seven (7) more gunshots on the north side of the building. A.J. stated that she immediately called 911 following the incident.

21.     Officers searched the north side of the building and located (7) spent casings on the ground near the main entrance door on W. Vera Avenue.

22.     Officers spoke with D.L. regarding the incident. D.L. stated that he was making pizzas near the front counter when he heard gun shots. D.L. stated that he ran to the rear of the store to take cover.

23.     Officers also spoke with S.M. S.M. stated that he was putting pizzas into the pizza carrying bags when the incident occurred. S.M. stated that he heard someone near the front counter say "Come here" and heard a single gunshot. S.M. stated that he immediately ran to the rear of the business and heard an additional (3) gunshots coming from the front of the store. S.M. stated that he ran outside and took cover behind a vehicle.

24.     Officers were able to view the Domino's Pizza security cameras and observed the incident. Officers observed the first suspect, hereinafter Suspect 1, to be a black male, approximately 5'6". Medium build, wearing a black coat with a white triangle on the left shoulder, blue jeans, gray underwear, and black shoes. Suspect 1 was wearing a hooded mask that covered a majority of his face with the hood of his coat pulled up.

Suspect 1 also wore corrective glasses with a dark frame. Suspect 1 was armed with a black semi-automatic handgun with an extended magazine.

25.     The second Suspect, hereinafter Suspect 2, was a black male, approximately 5'10", medium build, wearing a black coat, black jeans, and black shoes. Suspect 2 also wore a white surgical mask and was armed with a black semi-automatic handgun with a green lower receiver and grip. Both suspects were wearing rubber or latex gloves during the time of this incident.

26.     During the review of the surveillance video, officers observed Suspect 1 point his firearm at A.J. and moments later, fired a single shot which struck the standing food warmer. Suspect 2 then reached his firearm around a column in the lobby and blindly fires (4) rounds into the kitchen area. The two suspects then exit the business through the main entrance door. Suspect 1 stopped briefly in the doorway and turned around, pointing his weapon towards the front counter area. It appeared that the Suspect attempted to fire his weapon again, but the gun would not discharge. Both suspects exit the building and walk to the north side of the building. A gray 2008-2012 Chevrolet Malibu with a large dent on the rear passenger side door was then observed driving west on West Vera Avenue, then south on North Teutonia Avenue. Prior to entering the suspect vehicle, one of the suspects appeared to have observed two victims, D.L. and S.M., run away from the restaurant eastbound on West Vera Avenue, so they fired (7) gunshots in their direction. Neither D.L. nor S.M. were struck by the gunfire.

27.     Surveillance video was also recovered from 6930 North Teutonia Avenue (Express Wireless & Tobacco) which was located just north of the Domino's Pizza. Upon

9

review of the video, Officers observed the gray Chevrolet Malibu traveling east on West Vera Avenue and travel out of sight. The vehicle then came back into view, traveling west and parked along the north side of the Domino's building. Suspects 1 and 2 are observed exiting the vehicle, one from the driver's side and one from the passenger side of the vehicle. Both suspects are then observed entering the Domino's Pizza. Shortly thereafter, both suspects quickly exit the Domino's and one of the suspects was observed discharging his firearm multiple times (muzzle flashes are observed). Both suspects reenter the suspect vehicle, one entering the passenger side of the vehicle and one entering the driver's side of the vehicle. The suspect vehicle was then observed fleeing from the area, south on North Teutonia Avenue.

28.    On December 16, 2022, at 3: 08 a.m., MPD Officers observed a black 2009 Chevrolet Malibu, with WI plate ARE-7662, with damage to the rear passenger door, parked next to a gas pump at a gas station located at 1545 W. Hopkins Avenue. The Officers were aware of the vehicle's connection to the armed robbery that had occurred on December 14, 2022. Upon entering the gas station lot, Officers observed the occupants of the vehicle inside the convenience store associated with the gas station. Officers observed a black Glock handgun inside the vehicle, in plain view, on the center foldable arm rest inside the suspect vehicle. The firearm had a large clear extended magazine containing gold unfired cartridges.

29.    As the first occupant of the vehicle exited the gas station and approached the suspect vehicle, Officers approached and identified the suspect as BRANTLEY. Officers asked BRANTLEY if he had a CCW permit, if he was a felon, and if the firearm

inside the vehicle belonged to him. BRANTLEY told Officers that he did not have a CCW permit. BRANTLEY also stated that the firearm did belong to him but that he was not a felon. A record check of BRANTLEY revealed that he was indeed a convicted felon and was not authorized to be in possession of a firearm. Officers took BRANTLEY into custody at this time. The second occupant of the vehicle, identified as DORREUS N. EALY (dob: XX/XX/1986), then exited the gas station convenience store. EALY, who did not have a CCW permit, was placed into custody regarding the concealed handgun inside the suspect vehicle.

30. In addition to the loaded black Glock 17 Gen 5, bearing SN: BWFN803, firearm with a clear extended magazine (loaded with (40) 9mm rounds in the magazine and (1) unfired cartridge within the chamber), a search of the suspect vehicle identified (1) green latex glove, (2) blue latex gloves, (2) purple/blue latex gloves, (1) black iPhone with silver back, (1) red iPhone with a cracked screen and a rainbow case, (1) black ski mask with large single eye hole, (1) black (31) round capacity extended magazine, (1) black Adidas nylon bag that contained an additional Glock-styled magazine loaded with (17) 9mm unfired cartridges, and a small box of ammunition containing (6) 9mm unfired cartridges.

31. Also taken into custody, was the black jacket that BRANTLEY was wearing bearing a white triangle logo on the left shoulder that Suspect 1 can be observed wearing in surveillance video of the incident.

32. I know that on July 10, 2017, BRANTLEY plead guilty to federal charges of Title 18 USC 1951(a) unlawfully attempting to obstruct, delay, and affect commerce by

attempted robbery, and Title 18 USC 924(c)(1)(A)(ii), knowingly possessed and brandishing a firearm in furtherance of a crime of violence. I also know that BRANTLEY was sentenced on October 19, 2017 to 84 months in prison with two years of supervised release.

33.     On October 7, 2022, BRANTLEY was released from federal custody and was under federal supervision during the time this incident occurred. As part of BRANTLEY's conditions of his supervised release and due to BRANTLEY's prior felony conviction for which he served more than one year in the custody in the Federal Bureau of Prisons, BRANTLEY is prohibited from possessing firearms. *See United States v. Devon Brantley*, Case No. 16 CR 188 (E.D. Wis.).

34.     Following the recovery of the firearm from BRANTLEY on December 16, 2022, the firearm was test fired by a Forensic Technology Certified IBIS Technician and it was determined that casings recovered from the incident that occurred on November 7, 2022, the incident that occurred on November 30, 2022, and the incident that occurred on December 14, 2022, were fired by the same firearm. More specifically, all of the casings recovered on November 7, 2022, all of the casings recovered on the incident that occurred on November 30, 2022, and (1) of the casings recovered on December 14, 2022 were fired from the handgun seized from BRANTLEY.

## TECHNICAL TERMS

35.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites

13

orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

36. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that the electronic Device described above has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

14

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Device. This information can sometimes be recovered with forensics tools.

38. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether

15

data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

39. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

40. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>CONCLUSION</u>

41. Based on the facts contained within this affidavit, I believe that probable cause exists to search the Devices, which are more particularly described in Attachment A, for evidence of violations of Title 18, United States Code, Sections 1951(a) Sections 922(g)(1) (felon in possession of a firearm) and 924(c) as set forth in Attachment B.

16

## ATTACHMENT A
*Property to Be Searched*

The property to be searched is a black Apple iPhone with silver back and a red Apple iPhone with a cracked screen and a rainbow case, including any SD cards or other removable memory/storage devices inside the iPhones (the "Devices"). The Devices are currently located at the Milwaukee Police Department Property Room and assigned Inventory Item Nos. 22045806-1 and 22045806-2.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

17

## ATTACHMENT B
### *Particular Things to be Seized*

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm) or 1951(a) (Hobbs Act robbery), including but not limited to the following:

        a.      Electronic telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, e-mails, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding illegal activities among and between members and associates involved in drug trafficking or firearms possession or sale;

        b.      Photographs, videotapes or other depictions of assets, co-conspirators, controlled substances, or other activities related to robberies, firearms possession, or the use or sale of firearms.

        c.      Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

        d.      any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

        e.      all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created

or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.